390 A.2d 926 (1978)
STATE
v.
John ANDREWS.
No. 76-382-C.A.
Supreme Court of Rhode Island.
August 18, 1978.
*927 Julius C. Michaelson, Atty. Gen., Nancy Marks Rahmes, Special Asst. Atty. Gen., for plaintiff.
William F. Reilly, Public Defender, Dale G. Anderson, Asst. Public Defender, for defendant.

OPINION
JOSLIN, Justice.
The defendant, John Andrews, was tried and convicted before a jury in the Superior Court on an indictment charging rape.[1] On appeal, he assigns as error rulings (1) denying his motion to pass the case on the ground that the prosecutor in summation improperly called the jury's attention to his failure to testify, and (2) admitting hearsay evidence.
An extended factual recital is unnecessary. It is sufficient to observe that the only substantial jury question was not whether the victim had been raped, but by whom. At trial defendant, invoking the fifth amendment right to remain silent, did not testify. Rather, he based his defense solely on the alibi testimony of several witnesses. This was the posture of the case when the prosecutor argued to the jury in the following manner:
"On May 24, 1976, which is approximately eight days ago, we met for the first time. At that time we were going *928 to embark on a very important, a very serious task. That task would be to gethear the testimony, judge the evidence. Then you people would later retire and deliberate, after being charged by Judge Orton to deliberate and return a verdict of either guilty or not guilty as the evidence should so indicate.
"Now, in weighing the evidence, you must realize the state's burden is beyond a reasonable doubt. It's not beyond all doubt, because we would have toto be able to say beyond all doubt, we would have had to be there. And as far as we know now from the testimony elicited from that stand, only two people were there. And it was not yourselves or ourselves, but it was the defendant John Andrews and the victim * * *. Those are the only two people who can say beyond a shadow of a doubt. (Emphasis added.) Therefore, as we review, as you deliberate, and as you consider all evidence elicited, you must weigh the evidence with reason. Not beyond every single possibility, not beyond a shadow of a doubt. With reason.
"Now, you've heard testimony from 18 witnesses, 9 from the state, 9 from the defense. As you weigh their testimony you've got to attach credibility to each person. Can I believe that person? Can I believe the next person? Why can I? Why can't I? What kind of a person is thatdo they seem to be? This is how we judge people. We cannot possibly get into their minds and say, `This person just went through steps 2 and 4 which constitutes a lie.' We have no way of doing that. Science has not progressed that far. All we can do is judge what they say and how they act. And does that sound reasonable to us? If so, we must conclude that that person is telling the truth. And this is the kind of judgment you will make today.
"Now, things that Mr. Kelley has recited to you, things that I'm about to say with regard to past testimony, none of that is evidence, not one iota. Nor, is Mr. Kelley's conduct and my conduct, both, during the course of this trial and presently before you in final arguments. This is not law. This is not evidence. The only evidence that you may consider is what you've heard from that witness stand and whatever came through by way of physical evidence. You must weigh everything you've heard and you must deliberate. You must reach a decision."
The balance of his argument analyzed the testimony, attempting to discredit defendant's witnesses.
The defendant contends that the clear import of the italicized language was to emphasize that, of the two people who had actual knowledge of the facts, only one saw fit to tell the jury what happened. That emphasis, he argues, constitutes an adverse comment on his failure to testify and thereby runs afoul of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In that case the Supreme Court held that "the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Id. at 615, 85 S.Ct. at 1233, 14 L.Ed.2d at 110.
In two subsequent decisions the court did not further delineate the parameters of the Griffin rule.[2] Consequently, lower federal courts and the state courts have evolved different and sometimes inconsistent criteria for applying Griffin. See Vess, Walking a Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument, 64 J.Crim.L. & Criminology 22, 35-36 (1973).
Our initial response to Griffin was to consider only the particular comment that was challenged, rather than to adopt generally applicable standards for measuring permissible prosecutorial comment. We held it unconstitutional for a prosecutor to state in *929 closing argument that certain evidence was uncontradicted or had not been denied, when only the accused could contradict or deny that evidence. State v. Sherman, 113 R.I. 77, 81, 317 A.2d 445, 448 (1974).[3] Our implicit rationale was that such a statement "clearly calls to the jury's mind the fact that he failed to testify." United States v. Flannery, 451 F.2d 880, 881-82 (1st Cir. 1971).
Only a few months later, we adopted as our test whether the language under attack is "manifestly intended or was of such a character that a jury would naturally and necessarily construe it to amount to a comment on the failure of the accused to testify." State v. Fontaine, 113 R.I. 557, 563, 323 A.2d 571, 574 (1974).[4]
Before we consider the challenged language itself, we note that assessment of the propriety of prosecutorial argument to a jury requires review of the questioned statement in context and in light of attendant circumstances, rather than in isolation, and ascertainment of its meaning not in how we read it from the printed page, but in how a jury composed of ordinarily intelligent lay persons would understand it as they listened to the prosecutor's closing argument. State v. Sawyers, 116 R.I. 230, 234, 354 A.2d 115, 117 (1976).
Here the facts that prompted the prosecutor's comment were straightforward. As we have already observed, the evidence conflicted only with regard to a single questionwhether defendant or some unidentified person committed the rape. Although nine witnesses testified for each side, the only one among them who could identify the assailant was the victim, since she alone had witnessed the offense. The state's other witnesses provided only collateral support for her testimony. On the other hand, defendant did not testify, but relied instead on five witnesses who either testified to having been with him when the rape occurred or otherwise corroborated his alibi.
We must evaluate the prosecutor's remarks under the Fontaine standard in the light of these circumstances. The defendant characterizes those remarks as a "prosecutorial insinuation * * * that he failed to testify out of a consciousness of guilt," and as partaking of "constitutional brinkmanship." We do not read those remarks as having been so intended, nor do we believe that a jury would naturally and necessarily so construe them. Rather, the remarks were made while the prosecutor explained the state's burden of proof, and were introductory to his subsequent attack upon the credibility of the defense witnesses. The state's burden, the prosecutor argued, was to prove defendant's guilt beyond a reasonable doubt, not to the point of absolute certainty or beyond a shadow of doubt. That degree of certainty, he said, could exist only in the minds of those who participated in the alleged rape, not in the minds of the jurors. Because the assailantwhoever he might have beenand the victim were the only eyewitnesses, he continued, the jury were required to decide whether they would believe the state's or defendant's witnesses.
In sum, the prosecutor's argument was intended to persuade the jury that the evidence he had presented, if believed, was sufficient to support a conviction. This, we believe, is a meaning that the jury could reasonably have derived from that argument. That his remarks might have been construed as a reference to defendant's failure to testify does not necessarily call for *930 reversal. Sanchez v. Heggie, 531 F.2d 964, 966 (10th Cir. 1976).[5] Instead, despite the existence of other possible interpretations, Fontaine focuses exclusively on how a jury would "naturally and necessarily" construe what was said. State v. Fontaine, 113 R.I. at 563, 323 A.2d at 574.
Comments substantially similar to those in issue here have been considered elsewhere. For instance, the statement in a murder-rape case that "really none of us know, other than Carlos [the defendant] where this actual murder and rape took place," was held not a comment on the defendant's failure to testify, but an indirect statement of the prosecutor's belief in his guilt. Sanchez v. Heggie, 531 F.2d at 966. In another case, also involving a sex crime, a contention that it was error to instruct the jury that "the complaining witness and defendant are usually the only witnesses to the actual act or acts constituting the crime" was rejected as not containing "a direct or indirect allusion to defendant's failure to testify." State v. Fulks, 83 S.D. 433, 438-39, 160 N.W.2d 418, 421 (1968).
Similarly, a prosecutor's argument that he didn't "know exactly what happened that night, nobody knows exactly what happened except for Mr. Lackey and Mr. Miller [the defendants]" was held not to meet the test of being "calculated or intended to direct the attention of the jury to the defendant's neglect to avail himself of his right * * *." State v. Miller, 108 Ariz. 303, 308, 309, 497 P.2d 516, 521, 522 (1972). Finally, the comment, "[t]here is some merchandise missing. * * * Where is it? * * * [T]here are only four people in this room that knowjust fourand they are not about to tell us," passed muster under Griffin in Jacobs v. United States, 395 F.2d 469, 477 (8th Cir. 1968).
What authority there is, therefore, supports our view that, although the prosecutor might have chosen his language more circumspectly, that language is constitutionally permissible. Neither is that comment objectionable under our state constitutional and statutory counterparts of the fifth amendment [art. I, § 13 of our state constitution and G.L.1956 (1969 Reenactment) § 12-17-9] which provide defendant with protections that, at least for purposes of this case, are coextensive with his fifth amendment right to remain silent.
The defendant also assigns as error the admission of hearsay testimony. That testimony was elicited during cross-examination of Doreen Fugere, one of defendant's five alibi witnesses:
"Q You saw both those girls [the prosecuting witness and her sister] at school?
"A Yes.
"Q And they told you what happened?
"A Yes.
"Q Would you tell us what they said?
"A They
[Objection by defense counsel on hearsay grounds. Overruled.]
"A (Continued) She had said that she had got raped. At first she wouldn't tell me who did it. Then she said that Lanky [the defendant] had did it."
The statement, on one level at least, is clearly hearsayan out-of-court statement offered to prove the truth of the matter asserted therein. State v. Palmigiano, 112 R.I. 348, 359, 309 A.2d 855, 861 (1973). However, admission of this testimony was harmless error. The witness repeated an out-of-court statement of the victim, who had already testified that defendant was the rapist. In addition, the police officer who responded to the victim's call immediately after she escaped from her assailant testified that, as soon as her hysteria subsided, she told him she had been raped "by some guy named Lanky in a blue car." Another officer testified that, relying upon the description of the rapist and his automobile supplied by the victim that night, he *931 arrested defendant while defendant was entering an automobile like the one described. A third officer testified that when the victim viewed a lineup the day after the rape, she unequivocally identified defendant as her assailant. Thus, in addition to the victim's in-court identification of defendant, her out-of-court identifications were properly before the jury. Although this supplementing evidence cannot purge the questionable testimony of its hearsay `character, it certainly renders that testimony merely cumulative in light of the properly admitted identifications.
The defendant argues, however, that this testimony had heightened impact on the jury because it came from Fugere, a defense witness who had been a friend of the victim and whose credibility was thus less suspect than that of any other defense witness. That is sheer speculation, as is the defendant's further assertion that the jury might have inferred that Fugere believed the victim's statement. We will not engage in that kind of speculation. Instead, it is our judgment that the objectionable evidence-neither distracted the jury's attention from, nor influenced its decision on the ultimate issue of the defendant's guilt. Therefore, any error in its admission was harmless. State v. Bower, 109 R.I. 198, 203, 283 A.2d 39, 42 (1971).
The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is sustained, and the case is remanded to the Superior Court.
PAOLINO, J., participated in the decision but retired prior to its announcement.
BEVILACQUA, Chief Justice, dissenting.
I must respectfully dissent from my Brother JOSLIN's opinion. The rule that the majority follows today and the result it reaches effectively burden the exercise of the fifth amendment privilege against self-incrimination by making assertion of that privilege fair game for indirect prosecutorial remarks which pass constitutional muster under the shroud of "commenting on the evidence." While I recognize the need to allow the state a measure of latitude in presenting its case and meeting its burdens of proof, nevertheless, I must defer to the preeminence of the fifth amendment guarantees.
This is an area where our first duty is to protect the fundamental constitutional rights of the criminal defendant, not to further the cause of prosecutorial advocacy by engaging in legal sophistry that threatens the unbridled exercise of those precious rights. I do not believe that the result reached by the majority here was intended or foreseen by the Supreme Court in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), or that it squares with our cases applying the Griffin rule. Furthermore, to the extent that the rule in State v. Fontaine, 113 R.I. 557, 323 A.2d 571 (1974), dictates the result reached by my Brother Joslin, I would urge that it is an erroneous application of Griffin and should be changed. Specifically, I believe that the test of whether a prosecutorial remark violates the Griffin rule should be based on whether the jury could reasonably construe the remark to be a comment on the failure of the accused to testify, not whether the jury must so construe the remark, which is the rule enunciated in Fontaine and applied by the majority here.
The self-incrimination clause of the fifth amendment protects a criminal defendant from being compelled to testify at his trial. This protection is coupled with the presumption that a criminal defendant is innocent until proved otherwise. The effect of the presumption is to place the burden of proving guilt beyond a reasonable doubt on the prosecution. The criminal defendant does not have to prove his innocence. However, by allowing prosecutors to focus the jury's attention directly or indirectly on defendant's failure to testify, as was done here, we are chipping away the shield of the fifth amendment and sanctioning an unconstitutional rebuttal of the presumption of innocence. We are forcing criminal defendants to take the stand in an effort to avoid the effect of the seed of negative inference that can, with the prosecutor's help, be planted in the jury's mind with respect to a *932 defendant's right not to testify. This negative inference is that because defendant did not testify, he must be guilty; otherwise, he would have taken the stand to prove his innocence and rebut the state's case. We must establish a steadfast rule to insure that such negative inferences do not attend the exercise of the fifth amendment rights. We must not allow the prosecutor to approach the precipice of prejudicial commentary ever more closely under a rule that rewards such tactics of constitutional brinkmanship.
I believe that Griffin addressed this problem specifically to forbid the placing of such an exorbitant tax on the right to remain silent. And I believe that Griffin did so according to a standard under which the remarks in this case would be found unconstitutional.
The Supreme Court in Griffin reversed a murder conviction because in his remarks to the jury at trial the prosecutor had commented on the defendant's failure to testify. The Court held that such commentary is a throwback to the "inquisitional system of criminal justice" and is prohibited by the fifth amendment. To allow such comments would, the Court reasoned, make the defendant's assertion of his fifth amendment rights costly. Thus the Court struck down the comment because it allowed an inference of guilt to be drawn by the jury from the fact that the defendant failed to testify. The Court did not say that such an inference must have been the only inference that could possibly have been drawn by the jury.
I believe that the rule enunciated in Griffin is that the fifth amendment forbids the state or the courts from reinforcing the inference of guilt that a jury might draw from a defendant's failure to testify to such an extent that it would seem to the jury that such inference of guilt was the most likely of the inferences that could be drawn from the defendant's silence. This rule stresses the effect the remarks would most likely have on the jury, not, as Fontaine suggests, the intent of the prosecutor in making them. Nor does the Griffin rule demarcate any magic words that must be intoned by the prosecutor before his or her remarks cross the line between constitutionally permissible and impermissible. I believe that the clear import of the Griffin rule is that if what was said could reasonably be taken by the jury to be a comment upon defendant's right not to testify, then the language is improper.
Other courts have concurred with my reading of Griffin. E. g. United States v. Handman, 447 F.2d 853 (7th Cir. 1971). Such courts hold that even indirect comments may violate the Griffin rule. Id.; Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969).
This court has established various guidelines to consider in determining whether a challenged remark is unconstitutional under Griffin:
(1) was the comment directed specifically to the defendant's failure to take the stand or to the quality of evidence presented by the defense; (2) did the trial justice, after objection was made, give a proper cautionary instruction; (3) were the prosecutorial comments aggravated or repetitive; (4) was the defendant the only person who could refute the evidence which would thereby cause the comment to be directly pointed at the accused. State v. Jefferson, 116 R.I. 124, 137, 353 A.2d 190, 198 (1976).
Applying the fourth criterion to the remark in this case as it is quoted in the majority opinion, it is evident that defendant was the only person who could have refuted the evidence which caused the comment to be pointed directly at him. That evidence consisted of direct testimony by the victim that defendant was her assailant. As the majority opinion points out, only the assailant and the victim could answer the question of who was present when the alleged rape took place. The other testimony in the case was balanced fairly evenly, with nine witnesses for defendant placing him elsewhere at the time of the incident or confirming his alibi, and eight witnesses for the state supporting the victim's testimony. Because the victim placed defendant at the scene, *933 and because the prosecutor remarked that "as far as we know from the testimony * * only two people were there * * * defendant John Andrews and the victim * * *," defendant was clearly the only person who could, under the prosecutor's analysis, refute this evidence. The comment therefore emphasized defendant's failure to take the stand. Given the otherwise balanced state of the evidence, this emphasis could reasonably be said to have reinforced the inference of guilt that would have appeared in the jury's mind and made that inference the most probable that could have been drawn concerning defendant's exercise of his fifth amendment privilege. This result is constitutionally impermissible under Griffin according to guideline (4) in Jefferson, as quoted above. Therefore, the remarks by the prosecutor were improper.
I do not believe that otherwise prejudicial remarks are validated simply because a possible inference other than one going to defendant's guilt can be drawn from them. The majority, while admitting the lack of linguistic discretion of the prosecutor in choosing his remark, nevertheless feels that this possibility of a nonprejudicial inference is dispositive of this case under the standard of State v. Fontaine, 113 R.I. 557, 323 A.2d 571 (1974). I suggest that under the Jefferson criteria, which serve as a gloss to the Fontaine standard, the remarks were improper because of the probability of a prejudicial inference. I also suggest that, to the extent the remarks are constitutionally permissible under Fontaine because they are susceptible of a nonprejudicial inference, we should reject that standard and follow the true spirit of Griffin by applying the test enunciated in United States v. Handman, 447 F.2d 853 (7th Cir. 1971), which is that if the remarks could reasonably be taken by the jury as a comment upon the defendant's right not to testify, then they are impermissible. I believe that a jury could reasonably have understood the prosecutor's remarks in this case as such a comment. In fact, I believe that understanding would have been more probable than possible.
Because the evidence on the record establishing defendant's guilt is hardly overwhelming, it is impossible to say that the prosecutor's comment was not fatally prejudicial to defendant, especially under the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In Chapman the Court stated that a violation of the Griffin rule required reversal if the state could not show beyond a reasonable doubt that the error was harmless. Therefore, under Griffin, Chapman and Jefferson, all supra, it is my opinion that the conviction must be reversed.
The risk which I fear will result from adoption of the majority viewpoint is that in close cases where the state does not feel certain it has established the defendant's guilt beyond a reasonable doubt, prosecutors will, with the court's approval, indirectly categorize the defendant's failure to testify as being evidence of guilt by making comments that reinforce the probability that juries will draw that inference. The result is no more palatable, and worse, no less destructive to the constitutional rights of the defendant, simply because it is caused by a statement that may be labeled as a comment on the evidence. A prosecutor should not be able to accomplish by trial tactic what he or she cannot accomplish directly.
The cumulative effect of allowing such comments will inevitably be to increase the likelihood that a jury will treat the silence of a defendant as an indication of guilt. The defendant will be faced with a Hobson's choicehe will be compelled to testify or else suffer the natural disadvantage that will attend the exercise of his constitutional right to remain silent. A defendant should not, under the fifth amendment, have to assert his innocence by waiving the fundamental constitutional right not to testify. However, the cumulative effect of the continued application of the standard followed by the majority for assessing the constitutionality of prosecutorial remarks brings us perilously close to that situation.
NOTES
[1] The defendant was acquitted of charges of kidnapping and robbery arising out of the same events.
[2] Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968) (per curiam); Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968) (per curiam).
[3] The closing remark of the prosecutor's argument was "Might I point out, Ladies and Gentlemen, that the actual fact of the assault has never been denied * * *." 113 R.I. at 79, 317 A.2d at 447.
[4] In Fontaine, the trial justice asked defense counsel, in the presence of the jury, if he intended to call the defendant as a witness, and counsel responded that he did not. On appeal the defendant argued that the trial justice's remark amounted to an adverse comment on his failure to testify in violation of his fifth amendment rights. We rejected that contention, holding that the question, considered in context, was not "of such a character or * * even remotely intended to necessarily constitute a comment directed at the failure of defendant Fontaine to testify." 113 R.I. at 563, 323 A.2d at 575.
[5] In Maine where a more stringent test prevails, a prosecutor is under an affirmative duty "to refrain from the use of equivocal or ambiguous language in argument." State v. Tibbetts, 299 A.2d 883, 888 (Me.1973).