STATE *vs.* ROBERT MILNE.

DECEMBER 28, 1962.

PRESENT: Condon, C. J., Roberts, Powers and Frost, JJ.

316

ROBERTS, J. This is an indictment wherein it is charged that the defendant received into his room in a dwelling house in the town of Westerly a person "for the purpose of committing an indecent act * * *." After a trial to a jury in the superior court the defendant was found guilty. Thereafter his motion for a new trial was denied by the trial justice, who then sentenced the defendant to a term of one year. The defendant has prosecuted a bill of exceptions to this court.

It appears from the record that on April 7, 1960 defendant pleaded not guilty to the indictment and that on May 12, 1960 a justice of the superior court granted his motion for a change of venue as a consequence of which the case was transferred to Providence county for trial. Thereafter in Providence county defendant's motion for the filing of

special pleas was heard and denied on May 18, 1960. On June 17, 1960 his motion to quash the indictment was heard and denied. The case went to trial in the superior court on October 18, 1960, and, after having been found guilty, defendant moved for a new trial, which motion was heard and denied on November 4, 1960. On January 4 the justice of the superior court, after denying the motion of defendant to arrest the judgment, imposed the sentence above referred to.

It is not disputed that the intendment of this indictment is to charge defendant with a violation of G. L. 1956, §11-34-5, in that he received into a room in a dwelling house a sixteen-year-old boy for the purpose of committing an indecent act. Section 11-34-5 is an omnibus enactment that makes unlawful certain conduct when designed to promote prostitution and lewdness. The statute, in substance, makes it unlawful for any person to secure or transport another "for the purpose of prostitution, or for any other lewd or indecent act" or to loiter on any thoroughfare or in any public or private place to induce, solicit or entice another "to commit lewdness, fornication, unlawful sexual intercourse or any other indecent act * * *." The specific provision thereof pertinent to this indictment makes it unlawful for one person "to receive or offer or agree to receive any person into any place, structure, house, building, room, or conveyance for the purpose of committing any such acts * * *."

It appears from evidence adduced by the prosecution and not contradicted by defendant that on the evening of September 3, 1959 a youth, then sixteen years of age, went to the dwelling house wherein defendant resided. Entering the house he went to a bedroom where he met defendant and thereafter submitted to a sexual connection per os on the part of defendant. It further appears that the submission of the youth was entirely voluntary and that at the time the act was consummated the participants were alone in the bedroom.

The specific offense then with which this defendant is charged is receiving a person in a room for the purpose of committing an indecent act therein, the conduct made unlawful by the pertinent portion of §11-34-5. The indecent act prerequisite to guilt set out in the indictment as a "carnal connection per-os" describes the act of copulation per os, hereinafter referred to as fellatio. The defendant relies primarily upon his contention that fellatio is not an indecent act within the contemplation of the statute inasmuch as it was not a crime at common law and has not been made one by statute. Absent an indecent act defendant argues he cannot be guilty of the conduct proscribed in the pertinent part of §11-34-5.

The defendant, as we understand him, does not argue that fellatio, if criminal, would not be an indecent act within the purview of §11-34-5. His contention is that fellatio is not criminal, at least when performed in the circumstances revealed by the evidence here. Therefore, he argues that in this case the act for which he received another into the room cannot be held to constitute an indecent act within the meaning of §11-34-5.

We cannot agree with the conclusion that defendant thus reaches, it being our opinion that under the provisions of G. L. 1956, §11-10-1, fellatio has been made criminal whatever might be the circumstances in which it is committed. The statute, in pertinent part, reads: "Every person who shall be convicted of the abominable and detestable crime against nature, either with mankind or with any beast, shall be imprisoned * * *."

The inquiry that this court may properly make in this case is limited to ascertaining from the terms of the statute whether the legislature intended to make fellatio criminal and, if so, whether provision was made therein for any exception under which the act would not be criminal by reason of the circumstances in which it was performed. Whether the act, when performed in private between consenting

adults, should be deemed to be free of criminality and excepted from the statute is a matter exclusively for determination by the legislature. If, in enacting the pertinent statute, the legislature has not so provided, then this court will not under the guise of construing the statute read into it any such exception.

There is a substantial and persuasive line of authorities supporting the proposition that statutes which make the crime against nature unlawful are not merely declaratory of the common law, which would confine the statutory offense to the doing of such acts as would constitute sodomy at the common law. To the contrary, these authorities hold that where the crime against nature is made criminal by statute, the legislation is to be given a broad and comprehensive construction so as to include within the prohibition thereof unnatural copulation in all its forms. In other words, the generality of the prohibition of statutes of this kind is significant of a legislative intent to bring within the thrust of such legislation all unnatural acts of copulation involving either man or beast and including sodomy. *State v. Cyr,* 135 Me. 513. In that case, the statute being identical with ours, the court said at page 514: "By the weight of recent authority apparently supported by better reasoning, sodomy as used in connection with statutes prohibiting the crime against nature is interpreted in its broad sense and held to include all acts of unnatural carnal copulation with mankind or beast." Statutes that are almost identical with the statute here under consideration have been construed as including fellatio. *State v. Griffin,* 175 N. C. 767; *Sledge v. State,* 142 Neb. 350; *In re Benites,* 37 Nev. 145; *State v. Maida,* 29 Del. 40.

The courts which adhere to this view attach significance to the phrasing employed in these statutes, noting that they do not refer to the common-law offense of sodomy but expressly prohibit the crime against nature. These courts find this phraseology significant of the legislative intention to

proscribe unnatural sexual activities beyond those which were contained in the common-law offense of sodomy. In the case of *Berryman* v. *State,* Okl. Cr., 283 P.2d 558, the court, considering a statute almost identical with ours, said at page 563: "We emphasize again that out [sic] statute does not mention the word sodomy, but punishes the 'abominable and detestable crime against nature' which includes not only sodomy as defined at common law but all unnatural sexual copulation."

In considering similar statutory language the Indiana court found it significant of an intention to proscribe conduct other than that which would constitute sodomy at common law. In construing a statute almost identical with the one here under consideration, that court in *Murray* v. *State,* 236 Ind. 688, at page 693, quotes with approval from *Sanders* v. *State,* 216 Ind. 663. In that case the court said at page 664: "The statute in this state defines the crime as 'the abominable and detestable crime against nature with mankind or beast.' This court has held in common with the courts of other jurisdictions under similar statutes, that the statutory definition includes both common-law sodomy and acts of a bestial character whereby degraded and perverted sexual desires are sought to be gratified contrary to nature."

We also attach significance to the use of the phrase "crime against nature" in the instant statute. In employing this phraseology the legislature made clear an intention to change the common law with respect to the criminality of unnatural copulation and, in so doing, made inappropriate an application of the rule of statutory construction concerning the strict construction of penal statutes. Conceding the validity of the rule of strict construction of penal statutes in appropriate cases, it is not to be invoked where its effect would be to defeat a clear legislative intent, which in the instant statute is to proscribe all forms of unnatural

copulation whether or not such would have constituted so-
domy at common law.  *State* v. *Foster,* 22 R. I. 163.

The legislative intent to proscribe all unnatural copula-
tion in §11-10-1 becomes abundantly clear when the provi-
sions of title 11 are read in their entirety.  The provisions
thereof which relate to sexual offenses reveal an intention
to proscribe all natural copulation that takes place outside
of the marriage status.  In view of this intention the legis-
lature will not be presumed to have intended to reach an
absurd result by further proscribing only those unnatural
copulations that would have constituted sodomy at com-
mon law while leaving uninhibited all other forms of un-
natural copulation.  Statutes are not to be so construed as
to reach meaningless or absurd results.  *State* v. *Huxford,*
35 R. I. 387.  We are of the opinion then that when the
provisions of §11-10-1 are read in the context of the entire
title, the legislative intent becomes obvious, that is, that
all unnatural sexual copulation was to be made unlawful
along with normal extramarital sexual intercourse.

It is conceded that the legislature could have made fella-
tio unlawful in express terms, and it may be argued that
had it so intended it would have done just that.  Reason-
ing of this kind has frequently been employed by the courts
when construing statutes to buttress refusals to read into
them provisions which were not included therein in express
terms by the legislature.  It is not always, however, an
effective or even appropriate test for ascertaining the in-
tent of a legislature from the terms of the statute.  In our
opinion that is so in the instant case.

It is well settled that in enacting statutes the legislature
is presumed to know the law and the effect thereof on its
enactments.  *State* v. *Lewis,* 91 R. I. 110, 161 A.2d 209.  It
would therefore be proper in the instant case to presume
that the legislature was cognizant of the rule that statutory
enumerations are frequently held to exclude matters not
within the enumeration.  In such a circumstance the legis-

lature would be aware that the very comprehensiveness it sought to attain in the instant statute by using the phrase "crime against nature" could be nullified by any attempt to enumerate. It is our opinion that fellatio is criminal under the provisions of §11-10-1 and is therefore an indecent act within the purview of the pertinent provisions of §11-34-5.

The defendant contends also that §11-34-5 is so vague and indefinite concerning the conduct therein proscribed as to violate his constitutional right to due process under art. I, sec. 10, of the constitution of Rhode Island and the fourteenth amendment to the federal constitution. In substance he argues that the statute is unconstitutional in that it fails to sufficiently describe the offense contemplated therein and to set out reasonably adequate standards for the determination of guilt thereunder. In essence then he is raising the question whether the provisions of the statute satisfy the constitutional requirement for certainty in penal statutes. Arguing that it does not, defendant contends that the phrase "an indecent act" is not a sufficient definition of the offense so as to inform the public of the specific conduct which constitutes such an act or to provide the courts with any adequate standards for ascertaining what particular conduct does in fact violate the statute.

The constitutional requirement for certainty in penal statutes has been repeatedly considered by appellate courts, its thrust analyzed, and its burden defined. The extent of the legislative burden that inheres therein has been stated in *Boyce Motor Lines, Inc.* v. *United States,* 342 U. S. 337, at page 340, as follows: "A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government

inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

We are unable to agree that the instant statute lacks the certainty required by the constitution. Primarily the requirement is reasonable certainty, and it is our opinion that when the language employed to particularize the conduct prohibited is as specific as the subject matter reasonably permits, the constitutional requirement is satisfied. Obviously, some crime is almost impossible of description, particularly on the basis of a statement of all possible modes and manners in which the crime may be committed. It would not be reasonable to require a legislature to anticipate and describe in other than comprehensive terms all of the bizarre means for perverting the sexual function that are conceived by depraved minds. "In judging the sufficiency of the language employed in a penal statute it is necessary to give consideration to the latitude of the field encompassed and the consequent impracticability of rigid legislative criteria." *State* v. *Monteleone*, 36 N. J. 93, 99. It is obviously impracticable to attempt to prescribe rigid legislative criteria proscribing conduct in the area of sexual perversion and deviation. We are of the opinion that the language here challenged conveys a sufficiently definite warning as to the conduct proscribed when it is viewed in the light of common understanding and practice. The constitution requires no more certainty than this. *United States* v. *Petrillo*, 332 U. S. 1; *Blake* v. *State*, 210 Md. 459.

The sufficiency of the language in §11-34-5 becomes clear, in our opinion, when it is read in the context in which it appears therein. In that context the legislature clearly

intended using the term "indecent act" to include within the scope of the statute all unlawful sexual conduct as well as certain extramarital conduct therein already specified. In other words, it was making clear its intention to proscribe all unlawful sexual conduct, natural or unnatural, so as to avoid the exclusory effect that might be given to its enumeration of prostitution, lewdness, fornication, and unlawful sexual intercourse. The pertinent statute contemplates making unlawful any conduct designed to promote and further the accomplishment of sexual offenses, whether natural or unnatural, and, in our opinion, is sufficiently definite to convey a sufficient warning of the conduct proscribed therein when measured by common understanding. *State* v. *Hudson County News Co.*, 35 N. J. 284. It is then our opinion that the pertinent provision of §11-34-5 meets the constitutional requirement of certainty in penal statutes.

We turn now to a consideration of defendant's exceptions to the denial by the trial justice of his motion to file special pleas out of time, including a demurrer, and his motion to quash the indictment. Because these motions were made subsequent to defendant's plea of not guilty, we are not persuaded that the denial thereof by the trial justice was arbitrary and constituted an abuse of discretion. See *State* v. *Douglas*, 78 R. I. 60. If, however, we assume that error did inhere in either or both of these rulings, we are unable to perceive that defendant was thereby prejudiced. Each motion was based on defendant's contention that the provisions of the statute were so vague and indefinite as to deprive him of due process under the state and federal constitutions.

An examination of the record, however, reveals that defendant, in arguing his motion for a directed verdict, put this constitutional issue squarely before the trial court.

Upon a denial of the motion he prosecuted an exception to this court and thereunder argued the constitutional question here. In that circumstance it is our opinion that if error did inhere in either of these rulings, it was not prejudicial to defendant, and his exception therefore is overruled. For the same reason it is our opinion that the denial of his motion for an arrest of judgment subsequent to the verdict, if erroneous, was not prejudicial, and his exception thereto is also overruled.

There remain for our consideration two exceptions taken by defendant to evidentiary rulings of the court. One of these was taken to a ruling by the trial justice sustaining the state's objection to inquiry by defendant as to whether the witness, who had participated in the offense charged, had been charged by the state with the commission of a criminal offense. The interrogation was conceded to go to the credibility of the witness. In our opinion there was no error in the ruling sustaining the objection. The credibility of a witness may not be impeached by a showing of an arrest or a criminal accusation but only upon a showing of a conviction or a sentence. G. L. 1956, §9-17-15. See *State* v. *Christofaro*, 70 R. I. 57.

The remaining exception was taken to a ruling of the trial justice sustaining the state's objection to an inquiry addressed to the same witness asking whether, in participating in fellatio, he felt that he was "doing something wrong." The defendant contends the question was properly put for the purpose of adducing evidence as to the moral standards of the community. The trial justice sustained the objection expressly on the ground that on the issue of the moral standards in the community the "particular feeling and emotions of this witness" would be irrelevant. We see no error in this ruling, and both of these exceptions of the defendant are overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent,* Attorney General, *Edward A. Capomacchio,* Special Counsel, for State.