[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the court on defendant's motion to arrest judgment.
FACTS AND TRAVEL
Defendant was charged with four counts of first degree sexual assault, pursuant to R.I. Gen. Laws section 11-37-2 after a series of sexual encounters with the complaining witness. The case was tried before a jury which heard testimony from both the complainant and defendant, whose stories differed dramatically.
The witness testified that she accompanied defendant to his residence as a result of fear and coercion. She testified that, once there, defendant induced her through force or intimidation to submit to vaginal intercourse, anal intercourse, and two acts of oral intercourse. She testified that these acts occurred in defendant's bedroom and bathroom.
Defendant also testified at trial and acknowledged that three of the four acts described by the witness had occurred. He denied, however, engaging in the act of oral intercourse in the bathroom. In addition, he testified that the witness had consented to the other acts.
The jury returned verdicts of not guilty on all four counts of first degree sexual assault. However, the jury had been instructed that it could also consider the lesser included charge of Abominable and Detestable Crime Against Nature pursuant to R.I. Gen. Laws section 11-10-1. The jury accordingly returned guilty verdicts on two counts under 11-10-1.
While consent is a valid defense to a charge of first degree sexual assault, it is not a defense to a charge of crime against nature under 11-10-1. Therefore, it is fairly inferable from the jury's verdicts that the jury was persuaded by defendant's claim that the acts at issue were consensual. In addition, because the jury returned only two guilty verdicts, it is apparent that the jury believed the defendant's testimony as to the number of acts that occurred.
Following the jury's verdict, defendant filed a motion to arrest judgment pursuant to Rule 34 of the Rules of Criminal Procedure. Defendant argued on that motion that 11-10-1
unconstitutionally infringes on his right to privacy, to the extent that it prohibits private, non-commercial, consensual sexual acts, such as those involved here. The court reserved judgment on this motion and subsequently requested that the parties submit additional memoranda on the constitutionality of the sentence required by 11-10-1.
DISCUSSION
A. Constitutionality of R.I. Gen. Laws section 11-10-1
Section 11-10-1 provides that:
 Every person who shall be convicted of the abominable and detestable crime against nature, either with mankind or with any beast, shall be imprisoned not exceeding twenty (20) years nor less than seven (7) years.
Defendant argues that this statute, either on its face or as applied to consensual acts, is unconstitutional. He argues that, because the statute implicates the fundamental right of privacy, the state is required to demonstrate a compelling interest in proscribing the conduct to which it refers. Defendant asserts that no such interest exists.
Defendant acknowledges a number of interests which are frequently cited as justifications for such laws. These include the interest in preserving public morality, preventing violence, and preserving the integrity of marriage. He points out that a number of courts and legislatures of other states have found these reasons insufficient to continue to justify these laws. Defendant cites a number of cases as examples of the modern trend in this area: Schochet v. State, 330 Md. 714, 580 A.2d 176
(1990); Post v. State, 715 P.2d 1105 (Okla. 1986) aff'd717 P.2d 1151 (1986); People v. Onofre, 51 N.Y.2d 476, 434 N.Y.S.2d 947, 415 N.E.2d 936 (1980); State v. Pilcher, 242 N.W.2d 348
(Iowa 1976). As a result of this trend, fewer than half of the states retain statutes like 11-10-1. Defendant urges this court to follow the lead of the majority of jurisdictions and to strike down the application of 11-10-1 to this case.
While defendant's argument is well taken, the court's consideration of this issue is governed by the decision of our Supreme Court in State v. Santos, 122 R.I. 299, 413 A.2d 58
(1980). Santos involved facts and arguments which were strikingly similar to those presented here. As in this case, the defendant had been charged with and acquitted of sexual assault under similar circumstances and he argued that application of11-10-1 to consensual acts violated his right to privacy. In considering this challenge, the court reviewed the privacy decisions of the United States Supreme Court, including Carey v.Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Doe v. Commonwealth's Attorney,425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976); Roe v. Wade,410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Eisenstadtv. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The court then concluded:
 Notwithstanding the opinions of some state courts to the contrary, we do not believe that the decision of an unmarried adult to engage in private consensual sexual activities is of such a fundamental nature or is so "`implicit in the concept of ordered liberty'" to warrant its inclusion in the guarantee of personal privacy.
Santos, 413 A.2d at 68 (citations omitted).
Noting that the Santos decision was handed down more than thirteen years ago, defendant urges this court to distinguish or divert from that decision in this case and to follow the contrary authority of other jurisdictions. This court cannot accept the invitation. It may well be that if our Supreme Court were to consider the privacy issue in light of modern legal and societal trends, it would moderate its prior position, perhaps as a matter of State constitutional law. However, in the absence of such action, Santos remains the controlling law in this jurisdiction and requires rejection of defendant's privacy argument in this case.
B. Application of section 11-10-1 to unmarried persons
Defendant has submitted a fourth memorandum in support of his motion to arrest judgment. In that memo, he argues that the "discriminatory application" of 11-10-1 to unmarried persons and not to married persons violates the Equal Protection Clauses of the State and Federal Constitutions.
The Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution is called into play where statutes are not universally applicable. Although the clause does not deny the states the power to treat different classes of persons in different ways, it does prohibit them from legislating different treatment on the basis of criteria that is wholly unrelated to the objective of the statute. Eisenstadt v. Baird, supra, 92 S.Ct. at 1035. Equal protection demands that a classification be reasonable, not arbitrary, and rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. Id. In other words, the dissimilar treatment of different classes must be rationally related to a legitimate interest. It is important to note that while a statute may not infringe on the right to privacy, it may violate the Equal Protection Clause if it treats similarly situated persons dissimilarly.
In Eisenstadt, the court applied these requirements to a statute that banned the distribution of contraceptives to unmarried persons, but not to married persons. In that case, the court first determined the purpose of the law. Although the state contended that the law's purpose related to health, safety, and an intent to discourage fornication, the court concluded that, under the circumstances, these could not reasonably be regarded as the goals of the law. Rather, the court determined that the real purpose was merely to prohibit the perceived moral evil of contraception per se. However, the legislature's ability to implement this purpose was limited by the decision in Griswoldv. Connecticut, supra, which protected the right of married people to use contraception. Accordingly, the statute was made applicable only to unmarried persons.
Having ascertained this purpose, the court considered whether differential treatment of married and unmarried persons could have a fair and substantial relation to the moral object of the statute. The court concluded that it could not, stating:
 if Griswold is no bar to a prohibition on the distribution of contraceptives, the State could not, consistently with the Equal Protection Clause, outlaw distribution to unmarried but not to married persons. In each case, the evil, as perceived by the State, would be identical, and the underinclusion would be invidious.
Eisenstadt, 92 S.Ct. at 1038.
Under Eisenstadt, it is clear that the statute at issue in this case must be applied evenhandedly to married and unmarried persons if those classes are not dissimilarly situated with respect to its purpose.
The purpose of section 11-10-1 was alluded to in State v.Milne, 95 R.I. 315, 187 A.2d 136 (1962) appeal dismissed373 U.S. 542, 83 S.Ct. 1539, 10 L.Ed.2d 687 (1963). In Milne, the court considered the legislature's use of the term "crime against nature" to be significant in indicating its intent to prohibit broadly all forms of "unnatural" copulation. Milne, 95 R.I. at 320. Similarly, it can be inferred from the use of the phrase "abominable and detestable crime against nature" that the legislature was motivated to proscribe these acts due to their perceived reprehensible and immoral character. In fact, Milne
cites a decision of another court which construed a similarly worded statute to apply to all acts whereby "degraded and perverted sexual desires are sought to be gratified contrary to nature." Id. at 320. Again, this language suggests an underlying purpose of preventing immoral behavior. Thus, like the statute at issue in Eisenstadt, 11-10-1 appears to concern itself primarily with moral concerns.
The question, then, is whether married and unmarried persons are similarly or dissimilarly situated with respect to the morality of sexual acts. This question is similar to that presented in Eisenstadt and this court concludes that the answer must be the same: married and unmarried persons cannot be said to be dissimilarly situated with respect to moral behavior. In this case, the legislature was apparently offended by the immorality of certain acts themselves, regardless of the marital status of the actors. Thus, the dissimilar treatment of married and unmarried persons in this context is not rationally related to the moral purpose of the law. As one court has stated,
 to suggest that deviate acts are heinous if performed by unmarried persons but acceptable when done by married persons lacks even a rational basis, for requiring less moral behavior of married persons than is expected of unmarried persons is without basis in logic. If the statute regulated sexual acts so affecting others that proscription by law would be justified, then they should be proscribed for all people, not just the unmarried.
Commonwealth v. Bonadio, 490 Pa. 91, 415 A.2d 47, 51-2 (1980) (citing Eisenstadt v. Baird, supra). The legislature's absolute prohibition of all abominable and detestable sexual acts implies the view that these acts would be no less detestable within marriage than outside it. Accordingly, married persons and unmarried persons must be treated equally under the law.
On its face, section 11-10-1 appears to comply with the dictates of equal protection. It contains no exception for married persons. In addition, our Supreme Court has held that it was intended to make unlawful "all unnatural sexual copulation." Milne, 95 R.I. at 321 (emphasis added). Seealso State v. Santos, 413 A.2d at 65. However, it is apparent to this court, that in light of constitutional precedents, the section could not constitutionally be applied to married persons because it would violate the right to privacy inherent in the marital relationship.
In Griswold v. Connecticut, supra, the Supreme Court recognized a right of marital privacy which precluded the state from regulating marital sexuality by prohibiting the use of contraceptives. In so doing, the court expressed its concern that enforcement of such a statute would require such intrusive investigation in the "sacred precincts of marital bedrooms" that it was "repulsive to the notions of privacy surrounding the marriage relationship." Griswold, 85 S.Ct. at 1682. For the very same reasons, it should be abundantly clear that a prohibition against certain sexual acts could not constitutionally be applied against married persons.[1]
While the Supreme Court has ruled on other applications of laws like 11-10-1, it has never held that such statutes could be applied to married couples.
In Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), the court considered the application of a sodomy statute to a homosexual couple. The court rejected the claim that the statute violated the right to privacy. However, while the statute did not itself draw any distinctions between married and unmarried persons, the court expressly limited its holding to situations involving homosexuals and specifically refrained from ruling on the application of the statute to married persons. See Bowers, 106 S.Ct. at 2843 n.2. In fact, in that case, it was conceded by the State of Georgia that the statute could not constitutionally be applied to married couples because of the decision in Griswold. Bowers, 106 S. Ct. at 2858, n.10 (Stevens, J. dissenting). Thus, the Supreme Court's decisions support this court's finding that 11-10-1 could not be applied to married couples.
In Santos, the Rhode Island court reviewed the parameters of the right to privacy and emphasized that Supreme Court cases on privacy rights seem to focus on matters concerning procreation and contraception. Santos, 413 A.2d at 68. From this discussion, it may be argued that cases subsequent to Griswold
restricted that holding's application to intramarital matters relating only to procreation and contraception. This argument would render Griswold irrelevant to the application of section11-10-1, since the activities prohibited by that statute are not related to procreation. However, this argument is unpersuasive in light of the Supreme Court's statement in Roe v. Wade, supra,
that its prior opinions had established that the right to privacy applied to activities concerning procreation, contraception, family relationships, and child rearing, as well as marriage, which is mentioned quite apart from procreation. See Roe v.Wade, 93 S.Ct. at 726. See also Santos, 413 A.2d at 67. Indeed, despite the Santos court's view on the scope of privacy decisions, it specifically limited its own holding, regarding the application of 11-10-1, to unmarried persons.
Upon careful consideration of Supreme Court precedents, this court concludes that section 11-10-1 could not be applied to married couples. Although this issue is not directly before the court, it is critical to defendant's equal protection challenge. For, under the Equal Protection Clause, if the statute cannot constitutionally be applied to married persons, it cannot be applied to unmarried persons, who are similarly situated with respect to the purposes of the statute.[2] Therefore, the court concludes that, notwithstanding our Supreme Court's decision inSantos, Eisenstadt, when read in conjunction with Griswold,
indicates that the application of section 11-10-1 to unmarried persons is violative of the Equal Protection Clause.
While the ultimate result in this case is contrary to the result reached in Santos, it does not conflict with that decision because the court did not consider the equal protection issue in that case. In Santos, the court merely acknowledgedEisenstadt's equal protection holding in passing. Although it noted that Eisenstadt had been weakened somewhat by subsequent Supreme Court decisions, it was referring to the court's dicta on the right to privacy, not on its equal protection analysis. Nor does this conclusion conflict with the decision in Bowers,
which also specifically noted that no equal protection challenge was presented for review. Bowers, 106 S.Ct. at 2846, n.8.
This decision is also consistent with the decisions of courts in other jurisdictions which have considered equal protection challenges to statutes like 11-10-1. See Commonwealth v.Bonadio, 490 Pa. 91, 415 A.2d 47 (1980); People v. Onofre, 51 N.Y.2d 476, 434 N.Y.S.2d, 415 N.E.2d 936 (1980). Contra Statev. Poe, 40 N.C. App. 385, 252 S.E.2d 843, 845 cert. denied298 N.C. 303, 259 S.E.2d 304 (1979), appeal dismissed,445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980).
Lastly, the court would urge the state legislature to consider repealing 11-10-1 in order to bring Rhode Island into line with the majority of states. Also this would avoid the dilemma of the lesser included offense request in first degree sexual assault cases.
For the foregoing reasons, the court finds that it improperly instructed the jury to consider section 11-10-1 in this case. Defendant's motion for arrest of judgment is therefore granted and this court need not reach the constitutionality of the sentence provided for in 11-10-1.
[1] See v. Roberts, 502 F. Supp. 1342 (D.R.I. 1980). In that case, Judge Pettine noted that title 11 of the General Laws "purported to outlaw" all "unnatural" methods of copulation regardless of whether the participants were married. He then opined that "The State's power to prohibit particular types of sexual conduct between married persons is extremely questionable after Griswold." Id. at 1350. See also Bowers v.Hardwick, supra, 106 S.Ct. at 2857 (Stevens, J., dissenting) ("individual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of "liberty" protected by the Due Process Clause of the Fourteenth Amendment.") (citingGriswold v. Connecticut, supra).
[2] See Bowers v. Hardwick, supra, 106 S.Ct. at 2858 (Stevens, J., dissenting) Although Bowers only involved equal protection (though it was not presented for review), first considered whether the law could apply more generally as written. Concluding that it could not, he stated: "If the Georgia statute cannot be enforced as it is written — if the conduct it seeks to prohibit is a protected form of liberty for the vast majority of Georgia's citizens — the State must assume the burden of justifying a selective application of its law."